FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14 AM 9: 25

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of R.H., | No. 44587-5-II |
| Appellant. | PUBLISHED OPINION |

MAXA, J. — RH appeals a trial court order involuntarily committing him to Western State Hospital for up to 180 days for mental health treatment. He argues that the trial court erred in determining that he was gravely disabled. In supplemental briefing, he argues that the trial court lacked statutory authority to order 180 days of treatment (rather than 90 days) based solely on its determination of grave disability. We conclude that substantial evidence supports the trial court's factual findings and that these findings support its conclusion that RH was gravely disabled, but we hold that the trial court lacked statutory authority under RCW 71.05.320(1)[1] to commit RH for 180 days rather than for 90 days based on a finding of grave disability. We therefore reverse the involuntary commitment order and remand for proceedings consistent with this opinion.[2] We affirm in part, reverse in part, and remand.

---

[1] The legislature amended RCW 71.05.320 in 2013. LAWS OF 2013, ch. 289, § 5. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[2] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

No. 44587-5-II

## FACTS

On October 29, 2012, RH was charged with reckless burning. The trial court dismissed the charge without prejudice after adjudicating RH incompetent. RH then was sent to Western State Hospital for a civil mental health evaluation.

The State petitioned for a 180-day involuntary commitment to the hospital. In support of the petition, psychologist Gregg Gagliardi and psychiatrist Daniel Ruiz-Paredes reported that RH was gravely disabled.

> This frail, elderly man is chronically mentally ill and is doing especially poor in the community as he ages. He is homeless and reports that he lives outside at a camp at the top of the Salmon Beach cliff. He has a history of 17 hospitalizations including his most recent from which he was released in April 2012. Historically he agrees to community mental health services but when discharged/released he resumes his former lifestyle as an untreated homeless mentally ill person.

Clerk's Papers (CP) at 12-13.

Gagliardi testified at a January 31, 2013, hearing. He diagnosed RH with schizophrenia, which manifested in "loosening of associations, extreme disinhibition, occasional affective instability, mood lability, anger, irascibility and paranoia regarding people and their intentions." Report of Proceedings (RP) at 4. RH possessed a "vague insight at best" into his mental illness and was not taking medications and presented as irritable, disorganized, "and very psychotic." RP at 5.

Gagliardi opined that RH would be in trouble were he to be released because he was homeless and lived outdoors "in a camp near Salmon Beach," which "could be a very dangerous place for him to live without proper clothing and shelter." RP at 6. Gagliardi informed the court that RH was previously hospitalized and was most recently released in April 2012.

2

No. 44587-5-II

RH, who was present during the hearing, repeatedly interrupted Gagliardi. At one point he expressed, "You're nothing but whores and lunatics," and other times cursed at the court or Gagliardi. RP at 6. RH testified that he was subject to a "Gestapo action" and "Freudian bull****." RP at 9. He also stated that he had five people trying to kill him, and that when he told the police he went to jail and was abused.

The court found by clear, cogent and convincing evidence that RH was gravely disabled. It concluded that he "is in danger of serious harm resulting from a failure to provide for his . . . essential human needs of health or safety." CP at 16. The trial court did *not* check the box on the pre-printed order stating that RH

> was taken into custody after having been determined incompetent pursuant to RCW 10.77 and has committed acts constituting a felony (although criminal charges have been dismissed) and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts, considering the charged criminal behavior, life history, progress in treatment, and the public safety.

CP at 17. The trial court ordered that RH be confined to the hospital for treatment for up to 180 days.

RH timely appealed. We requested supplemental briefing pursuant to RAP 12.1(b) on the issue whether the trial court had the statutory authority to confine RH for 180 days based on a finding that he was gravely disabled.

3

ANALYSIS

A.    DETERMINATION THAT RH WAS GRAVELY DISABLED

RH argues that the trial court lacked substantial evidence to support its findings of fact and that the State failed to establish that he suffers from a mental disability that renders him gravely disabled.[3] We disagree.

The State sought RH's involuntary commitment under former RCW 71.05.280(4) (2008), which provides that at the expiration of a 14-day period of intensive treatment a person may be confined for further treatment pursuant to RCW 71.05.320 if that person is "gravely disabled." Although initially the State also requested RH's involuntary commitment under former RCW 71.05.280(3), it stated at the start of trial that it was withdrawing that request.

The State has the burden of proving that a person is gravely disabled by clear, cogent and convincing evidence. *Morris v. Blaker*, 118 Wn.2d 133, 137, 821 P.2d 482 (1992). RCW 71.05.020(17) defines "gravely disabled" as

> a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

When proceeding under this definition, a petitioner

> must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded. Furthermore, the failure or inability to provide for

---

[3] Although RH's commitment period under the challenged order has expired, this appeal is not moot because an involuntary commitment order may have adverse consequences on future involuntary commitment determinations. *In re Det. of M.K.*, 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012).

these essential needs must be shown to arise as a result of mental disorder and not because of other factors.

*In re Det. of LaBelle,* 107 Wn.2d 196, 204–05, 728 P.2d 138 (1986).[4] On appeal, "we will not disturb the trial court's findings of 'grave disability' if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." *LaBelle,* 107 Wn.2d at 209.

Here, the trial court found that RH had a mental disorder, diagnosed as schizophrenia and a psychotic mood disorder. Gagliardi provided the diagnosis of the mental disorder and testified that the disorder manifested in "loosening of associations, extreme disinhibition, occasional affective instability, mood lability, anger, irascibility and paranoia regarding people and their intentions." RP at 4. The trial court observed evidence of RH's disorder in court, where he displayed paranoia, and was swearing, very disorganized, and very disruptive.

The trial court also found that as a result of this mental disorder RH was "in danger of serious physical harm resulting from a failure to provide for his or he . . . essential human needs of health or safety" as required under RCW 71.05.020(17)(a). It found that RH goes in and out of the hospital when he stops taking medication, that he "normally lives in a camp," and that he cannot care for himself. CP at 15. The trial court's factual findings were supported by Gagliardi's testimony that RH was living outdoors and lacked proper clothing and shelter for the winter months, that RH appeared "very disorganized and very psychotic" in the hospital, and that he has been hospitalized in the past but returns "in a matter of months" because he stops taking medication. RP at 5.

---

[4] In *LaBelle,* our Supreme Court addressed former RCW 71.05.020(1) (1979), which the legislature recodified as RCW 71.05.020(17) without substantive changes. LAWS OF 2007, ch. 375, § 6.

These factual findings, in turn, support the trial court's determination that RH was gravely disabled because he could not provide himself with adequate clothing or shelter during cold weather months and that he was unable to obtain medical treatment sufficient to remain mentally stable unless involuntarily hospitalized. *LaBelle*, 107 Wn.2d at 210 (stating that patient would not receive adequate care if released and could not care for himself outside a hospital setting). In addition, RH's disorganization, outbursts during trial regarding perceived abuse, and fears of being killed also support that he could not care for himself. *LaBelle*, 107 Wn.2d at 210 (noting patient's "inability to respond appropriately to questions, and disorientation").

We hold that substantial evidence supports the trial court's findings that RH was gravely disabled because he was unable to provide for his health and safety needs as a result of his mental disorder, which put him in danger of serious physical harm.

B.      NO STATUTORY AUTHORITY FOR 180-DAY COMMITMENT

RH next argues that the trial court acted outside its statutory authority when it committed him for 180 days solely on the ground that he was gravely disabled.[5] We agree.

Former RCW 71.05.320(1) provides:

> If the court or jury finds that grounds set forth in [former] RCW 71.05.280 have been proven and that the best interests of the person or others will not be served by a less restrictive treatment which is an alternative to detention, the court shall remand him or her to the custody of the department or to a facility certified for ninety day treatment by the department for a further period of intensive treatment not to exceed ninety days from the date of judgment. If the grounds set forth in [former] RCW 71.05.280(3) are the basis of commitment, then the period of treatment may be up to but not exceed one hundred eighty days from the date of

---

[5] RH did not raise this issue in the trial court. The general rule is that issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a). However, we may review an issue not raised below if a trial court exceeds its lawful authority. And the State does not argue that we cannot address this issue for the first time on appeal. Because the extent of the trial court's statutory authority to commit gravely disabled persons involves a significant liberty issue, we address it.

judgment in a facility certified for one hundred eighty day treatment by the department.

The construction of a statute is a question of law that we review de novo. *In re Det. of Brock*, 99 Wn. App. 722, 724, 995 P.2d 111 (2000). When construing a statute, we give effect to the plain and ordinary meaning of the language used by the legislature. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 183, 97 P.3d 767 (2004). "As civil commitment statutes authorize a significant deprivation of liberty, they must be strictly construed." *In re Det. of J.R.*, 80 Wn. App. 947, 956, 912 P.2d 1062 (1996).

Under RCW 71.05.320(1)'s plain language, the trial court may order an individual to be involuntarily committed for up to 180 days only if "the grounds set forth in [former] RCW 71.05.280(3) are the basis of commitment." Former RCW 71.05.280(3) allows commitment if:

> Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts.
> (a) In any proceeding pursuant to this subsection it shall not be necessary to show intent, willfulness, or state of mind as an element of the crime.

But here, the trial court ordered RH's involuntary commitment only under former RCW 71.05.280(4) based on a finding that he was gravely disabled. The State, before trial, withdrew its request for commitment under former RCW 71.05.280(3). Further, because the trial court did not order RH involuntarily committed under former RCW 71.05.280(3), it did not enter any factual finding indicating that he "present[ed] a substantial likelihood of repeating similar acts [constituting a felony]."

Because the trial court ordered RH committed based on former RCW 71.05.280(4), under RCW 71.05.320(1) the trial court did not have authority to commit RH for 180 days.

Accordingly, the trial court exceeded its statutory authority when it ordered him involuntarily committed for up to 180 days.

We affirm the trial court's determination that RH is gravely disabled, reverse his 180-day commitment order as entered without statutory authority, and remand for proceedings consistent with this opinion.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.