# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 50068-0-II |
| W.D. | |
| Petitioner, | |
| | UNPUBLISHED OPINION |

MELNICK, J. — W.D. appeals from the trial court's denial of his motion for judgment on the pleadings challenging his civil commitment under the Involuntary Treatment Act ("ITA").[1] He argues that the State may not commit him under the "felony predicate clause," RCW 71.05.320(4)(c)(i), because he was not "in custody pursuant to RCW 71.05.280(3)."[2] We affirm.

## FACTS

On August 1, 2013, W.D. punched another individual in the face. After the State charged him with assault in the second degree, Western State Hospital (WSH) admitted him for a competency evaluation and, if necessary, restoration.

---

[1] We observe that amendments to the ITA took effect on April 1, 2018. LAWS OF 2018, ch. 201, 305. None of these amendments alters the specific provisions at issue in this case.

[2] W.D. also asks us to waive appellate costs. Pursuant to RAP 14.2, we will defer to the commissioner if the State files a cost bill and W.D. objects.

On November 6, 2013, the trial court dismissed the criminal charge, finding that, as a result of mental disease or defect, W.D. lacked the capacity to both understand the nature of the proceedings against him and to assist in his own defense. The trial court ordered that W.D. be committed to the care, control, and custody of the Secretary of the Department of Social and Health Services for up to 72 hours for evaluation for a civil commitment petition.

WSH then petitioned to have W.D. committed for 180 days. It alleged that W.D. was gravely disabled, that he was taken into custody as a result of conduct in which he inflicted physical harm upon the person of another, and that he continued to present, as a result of a mental disorder or developmental disability, a likelihood of serious harm. It also alleged that W.D. had been determined incompetent, that felony criminal charges, i.e. assault in the second degree, a violent offense, had been dismissed, and that W.D. had committed acts constituting a felony. As a result of a mental disorder, WSH alleged W.D. presented a substantial likelihood of repeating similar acts.

The court committed W.D. for 180 days, ruling that W.D. was gravely disabled, that he was in custody pursuant to RCW 71.05.280(3),[3] and that he continued to present a substantial likelihood of repeating acts similar to the charged criminal behavior as a result of mental disorder or developmental disability. It also observed a previous special finding that the underlying offense

---

[3] RCW 71.05.280(3) allows for commitment of a person who "has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts."

was a violent felony offense. Per these findings, the court committed W.D. pursuant to the felony predicate clause[4] and RCW 71.05.320(4)(d).[5]

WSH twice refiled its petition for 180 day commitment, alleging the same grounds for commitment. The court granted the petitions and committed W.D. until June 20, 2015, on grounds of grave disability and pursuant to the felony predicate clause.

On June 1, 2015, WSH moved to commit W.D. for another 180 days, but this time only on grounds of grave disability. The trial court granted the petition and committed W.D. for another 180 days. On similar petitions, the court granted two more 180-day commitments.

On October 26, 2016, WSH moved to commit W.D. for another 180 days. This time, however, it requested commitment both on grounds that W.D. was gravely disabled and under the felony predicate clause. W.D. moved for judgment on the pleadings, arguing that he could not be committed under the felony predicate clause because he had not "continue[d] to be in custody pursuant to RCW 71.05.280(3)." Sealed Clerk's Papers (SCP) at 138. He alleged that, for the prior three commitment periods, he had been committed only based on his grave disability.

The trial court denied W.D.'s motion and ruled that W.D. "remain[ed] in custody pursuant to RCW 71.05.280(3) because he ha[d] not had any period of unconditional release since his initial commitment on November 26, 2013." SCP at 150. It then committed him for another 180 days both under the felony predicate clause and because he was gravely disabled. W.D. appeals.

---

[4] The felony predicate clause, RCW 71.05.320(4)(c)(i), allows commitment of individuals who are "in custody pursuant to RCW 71.05.280(3) and as a result of mental disorder or developmental disability continue[ ] to present a substantial likelihood of repeating acts similar to the charged criminal behavior, when considering the person's life history, progress in treatment, and the public safety."

[5] RCW 71.05.320(4)(d) allows commitment of individuals who "[c]ontinue[] to be gravely disabled."

ANALYSIS

I.     MOOTNESS

W.D. acknowledges that his case is technically moot because he was committed both pursuant to the felony predicate clause, which he challenges, and because he was gravely disabled, which he does not challenge.  Nonetheless, W.D. contends that we should consider his appeal on the merits because the issue involves a continuing and substantial public interest.[6]  We agree.

"A case is moot if a court can no longer provide effective relief."  *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).  "The issue of mootness 'is directed at the jurisdiction of the court.'"  *Harbor Lands, LP v. City of Blaine*, 146 Wn. App. 589, 592, 191 P.3d 1282 (2008) (quoting *Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 350, 662 P.2d 845 (1983)).  We may raise the issue of mootness sua sponte.  *See In re Det. of C.W.*, 105 Wn. App. 718, 723, 20 P.3d 1052 (2001), *aff'd*, 147 Wn.2d 259, 53 P.3d 979 (2002).

We may retain and decide a moot appeal "if it involves matters of continuing and substantial public interest."  *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).  We recognize that issues pertaining to civil commitment raise "matters of continuing and substantial public interest" and bear consideration, despite their frequent mootness.  *See, e.g.*, *In re Det of M.W.*, 185 Wn.2d 633, 649, 374 P.3d 1123 (2016); *In re Det of C.W.*, 147 Wn.2d 259, 270, 53 P.3d 979 (2002); *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986).  Therefore, we consider W.D.'s substantive arguments.

II.     STATUTORY INTERPRETATION

W.D. contends that the plain language of the felony predicate clause only permits commitment of a person "in custody pursuant to RCW 71.05.280(3)."  W.D. claims that, as of June

---

[6] The State did not respond to W.D.'s mootness argument.

1, 2015, he was no longer in custody pursuant to RCW 71.05.280(3) because the State did not seek to commit him on that basis. He argues, therefore, that the trial court erred by committing him under the felony predicate clause.

The State responds that the correct reading of the felony predicate clause allows felony recommitments to "relate back" to an initial felony commitment, regardless of what grounds for commitment exist at the time of the petition. We agree with the State.

A.     LEGAL PRINCIPLES

In interpreting statutes, our goal is to "ascertain and carry out the legislature's intent." *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). "[W]e derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). The "plain language analysis may be corroborated by validating the absence of an absurd result. Where an absurd result is produced, further inquiry may be appropriate." *Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007).

If a statute is ambiguous, "we employ tools of statutory construction to ascertain its meaning." *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). A statute is ambiguous when it is "'susceptible to two or more reasonable interpretations,'" but is not ambiguous "'merely because different interpretations are conceivable.'" *Agrilink Foods, Inc. v. Dep't of Revenue*, 153

5

Wn.2d 392, 396, 103 P.3d 1226 (2005) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)). We decline "to add language to an unambiguous statute even if [we] believe[] the Legislature intended something else but did not adequately express it." *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002).

"Chapter 71.05 RCW governs the involuntary treatment and civil commitment of mentally ill individuals." *M.W.*, 185 Wn.2d at 641. "When a court declares that an individual is incompetent to stand trial for felony charges, the charges against that person are dismissed without prejudice and the person must undergo a mental health evaluation for civil commitment and treatment." *M.W.*, 185 Wn.2d at 642. "The civil commitment scheme for these individuals generally involves short-term periods of confinement, with the option for the State to petition for additional terms by the expiration of each period of confinement." *M.W.*, 185 Wn.2d at 642.

Because "'civil commitment statutes authorize a significant deprivation of liberty, they must be strictly construed.'" *In re Det. of R.H.*, 178 Wn. App. 941, 948, 316 P.3d 535 (2014) (quoting *In re Det. of J.R.*, 80 Wn. App. 947, 956, 912 P.2d 1062 (1996)).

We review questions of statutory interpretation de novo. *In re Det. of W.C.C.*, 185 Wn.2d 260, 265, 370 P.3d 1289 (2016).

B.    STATUTORY LANGUAGE

The felony predicate clause provides that a committed person:

[S]hall be released from involuntary treatment at the expiration of the period of commitment imposed under subsection (1) or (2) of this section unless the superintendent or professional person in charge of the facility in which he or she is confined . . . files a new petition for involuntary treatment on the grounds that the committed person: . . . *[i]s in custody pursuant to RCW 71.05.280(3)* and as a result of mental disorder or developmental disability continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior, when considering the person's life history, progress in treatment, and the public safety.

6

RCW 71.05.320(4)(c)(i) (emphasis added). In this case, the parties dispute only whether W.D. was "in custody pursuant to RCW 71.05.280(3)" at the time the State petitioned for his commitment in October 2016.

RCW 71.05.280(3) provides that a committed person "may be committed for further treatment pursuant to RCW 71.05.320 if: . . . [s]uch person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts."

"[W]hen the legislature has defined a statutory term, '[t]he statutory definition of a term controls its interpretation.'" *State v. Evans*, 164 Wn. App. 629, 634, 265 P.3d 179 (2011) (quoting *State v. Morris*, 77 Wn. App. 948, 950, 896 P.2d 81 (1995)). The ITA defines "[c]ustody" as "involuntary detention under the provisions of this chapter or chapter 10.77 RCW, uninterrupted by any period of unconditional release from commitment from a facility providing involuntary care and treatment." RCW 71.05.020(11). For W.D. to be committed under the felony predicate clause, he must meet this definition "pursuant to RCW 71.05.280(3)." RCW 71.05.320(4)(c)(i).

W.D. was initially committed on November 6, 2013 "pursuant to RCW 71.05.280(3) and RCW 71.05.290(3)." SCP at 15. His first 180-day commitment began on November 26, 2013, on grounds of grave disability and pursuant to the felony predicate clause. However, at the time the State filed the petition at issue on this appeal, W.D. had been committed only on grounds of grave disability for approximately a year and four months. Therefore, whether W.D. can be committed under the felony predicate clause depends on *when* he must be "in custody pursuant to RCW 71.05.280(3)."

7

Both parties' interpretations are consistent with the statutory definition of "custody." Custody is defined as an uninterrupted period of involuntary detention. RCW 71.05.020(11). Under the State's interpretation, a person initially committed on one basis who remains committed for an uninterrupted period remains in custody "pursuant to" the same basis for the length of their commitment. Under W.D.'s interpretation, a person would remain in "custody" for his or her entire commitment; however, the basis for that custody would change and, after the Hospital asserts a different basis for commitment, the person would cease being "in custody pursuant to" the original basis.

To determine the plain meaning of an undefined term, we may look to the dictionary. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). Black's Law Dictionary defines "pursuant to" to mean "1. In compliance with; in accordance with; under. 2. As authorized by; under. 3. In carrying out." Black's Law Dictionary 1431 (10th Ed. 2014). This definition does not help to resolve the meaning of the statute, since it is the legislature's temporal intention that the parties dispute. W.D. was originally committed pursuant to RCW 71.05.280(3) under this definition, however he was committed on other grounds at the time of WSH's petition. If the legislature intended the felony predicate clause to apply only to a person *currently* committed "pursuant to RCW 71.05.280(3)" then W.D.'s interpretation is correct; however if it intended the clause to apply to persons *originally* committed "pursuant to" that statute, then the State's interpretation is correct.

We conclude that the text of the felony predicate clause is ambiguous. However, in conducting a plain meaning analysis, we also consider "the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Evans*, 177 Wn.2d at 192.

C.      CONTEXT

W.D. contends that the ITA as a whole supports his interpretation of the felony predicate clause. He argues that his interpretation is consistent with the purpose of the ITA, "to prevent indefinite, involuntary commitment of mentally ill individuals." Sealed Br. of Appellant at 10. The State argues that its interpretation is more consistent with the ITA as a whole and its policies. It also contends that W.D.'s interpretation, read in context, produces absurd results. We agree with the State.

      i.      Statutory Context

RCW 71.05.320(4)(b) permits continued commitment for persons who were "taken into custody" as a result of violent conduct. This provision provides support for W.D.'s interpretation of the statute because it demonstrates that the legislature knows how to expressly refer back to initial commitment but did not do so in the felony predicate clause. However, RCW 71.05.320(4)(a) permits continued commitment where the committed person, "[d]uring the current period of court ordered treatment" has threatened, attempted, or inflicted physical harm. This provision provides an example of the legislature demonstrating that it also knows how to expressly limit a committing court's consideration to the current period of commitment. Given that the legislature did not use either of these phrases in the felony predicate clause, the presence of both of them in the same statutory section does not help evaluate the legislature's intended meaning of "in custody pursuant to."

      ii.      Absurd Results

When construing statutes, we avoid readings that produce absurd results. *Tingey*, 159 Wn.2d at 663-64.

9

If W.D.'s reading of the statute is correct, it would only be lawful for WSH to commit him, or any other person, for one 180-day period pursuant to the felony predicate clause. The felony predicate clause requires that the person being committed be "in custody pursuant to RCW 71.05.280(3)." RCW 71.05.320(4)(c)(i). After a person is committed under the felony predicate clause, however, under W.D.'s reading, that person would no longer be committed "pursuant to RCW 71.05.280(3)" because he would be committed pursuant to the felony predicate clause itself: RCW 71.05.320(4)(c)(i). The felony predicate clause does not allow for commitment of individuals in custody pursuant to *itself*, only individuals committed pursuant to RCW 71.05.280(3).

Under the State's interpretation of the felony predicate clause, "is in custody pursuant to RCW 71.05.280(3)" refers to the *initial* grounds for commitment. Even after a person has been recommitted on grounds other than RCW 71.05.280(3), such as the felony predicate clause itself or another provision, WSH may continue to use the felony predicate clause as grounds for commitment of that person.

The State's reading is more consistent with other provisions of the statute. RCW 71.05.320(4) states that if "conduct required to be proven in (b) and (c) of this subsection was found by a judge or jury in a prior trial under this chapter, it shall not be necessary to prove such conduct again." If W.D.'s interpretation is correct, and a person may only ever be committed a single time under the felony predicate clause, the language allowing WSH to rely on previous findings would never be necessary. When interpreting statutes, we "give effect to all the language used so that no portion is rendered meaningless or unnecessary." *Cornu-Labat v. Hosp. Dist. No. 2 of Grant County*, 177 Wn.2d 221, 231, 298 P.3d 741 (2013).

W.D.'s interpretation of the statute produces absurd results and is incorrect. The legislature cannot have intended to allow only one 180-day commitment under the felony predicate clause per committed individual. The absurd results produced by W.D.'s reading of the statute weigh heavily in favor of the State's interpretation. However, given the ambiguity of the statute, we consider the parties' additional arguments as well.

### iii. Notice Provisions

The State contends that the statutory provisions requiring notification of victims, witnesses, and law enforcement authorities of a committed person's release would be rendered absurd by W.D.'s reading of the statute. We agree.

If WSH decides to release a person committed pursuant to RCW 71.05.280(3) instead of filing a new petition, it is required to notify the "prosecuting attorney of the county in which the criminal charges against the committed person were dismissed" of the decision. RCW 71.05.325(1). Similarly, it must notify a list of individuals before the "conditional release, final release, authorized leave, . . . or transfer to a facility other than a state mental hospital" of any person committed under either RCW 71.05.280(3) or 71.05.320[(4)](c) if the crime originally dismissed was a sex, violent, or felony harassment offense. RCW 71.05.425(1)(a).

W.D.'s interpretation of the ITA would render these notice provisions inapplicable in the majority of cases. If a change in the grounds for commitment results in a committed person no longer being "in custody pursuant to RCW 71.05.280(3)," then their release would no longer trigger these notice provisions, even if they were initially committed after having violent felony charges dropped. However, the continued commitment on other grounds does not "release" the person in any way, so the notice provisions would not trigger when the person stops being

11

committed under the grounds requiring notice. W.D.'s interpretation would render the ITA notice provisions absurd and superfluous in many cases.

        iv.     ITA Policy

"The ITA serves a number of important governmental interests." *M.W.*, 185 Wn.2d at 650. W.D. highlights the interest "to prevent indefinite, involuntary commitment of mentally ill individuals." Sealed Br. of Appellant at 10. The State highlights the ITA interests in protecting public safety and providing continuing and appropriate treatment for individuals with serious mental disorders. *See M.W.*, 185 Wn.2d at 650. The Supreme Court has recognized that the felony predicate clause was "designed to protect public safety from violent acts and provide proper treatment for people charged with these acts who were found incompetent to stand trial." *M.W.*, 185 Wn.2d at 651.

The State's interpretation of the statute is not inconsistent with the ITA policy to prevent indefinite, involuntary commitment because even under its interpretation, WSH must petition every 180 days for a new period of commitment. Additionally, under the felony predicate clause, it must not only show that the person is in custody pursuant to RCW 71.05.320(3), but also that he or she "continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior." RCW 71.05.320(4)(c)(i). This clause ensures that only individuals that continue to be dangerous will be committed under the State's interpretation.

If we were to adopt W.D.'s proposed interpretation of the felony predicate clause, a person may be committed once pursuant to RCW 71.05.320(4)(c)(i) and then additional commitment must be based on an alternative ground because the person will no longer be "in custody pursuant to RCW 71.05.280(3)." This would put a hard cap on the amount of a time a person can be committed under the felony predicate clause, even when the person continues to present a substantial

likelihood of repeating acts similar to the charged criminal behavior due to their mental disorder. This result is inconsistent with the policy of protecting public safety and providing continuing and appropriate treatment for individuals with serious mental disorders. Because W.D.'s interpretation of the statute is inconsistent with the policies of the ITA, his argument fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.040, it is so ordered.

 

Melnick, J.

We concur:

Johanson, J.

Maxa, C.J.