

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 35141-6-III |
| | ) | |
| G.W. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, J. — G.W. appeals a trial court order authorizing his involuntary commitment at Eastern State Hospital (Eastern) for up to 180 days. We affirm.

FACTS

In February 2017, a doctor with Eastern filed a petition requesting G.W. be committed for up to 180 days.[1] This was not G.W.'s first commitment order. This court upheld a prior 180-day commitment order in 2017.[2]

At a contested hearing on the commitment petition, the trial court heard from G.W. and one of G.W.'s doctors. The doctor explained G.W. suffers from a medical disorder (either schizoaffective disorder, paranoid schizophrenia, or bipolar disorder) which causes G.W. to become paranoid and delusional. G.W. often becomes aggressive as his

---

[1] The doctor also filed a request for an involuntary medication order. The resultant medication order is not at issue in this appeal.

[2] *In re Det. of G.W.*, No. 34199-2-III (Wash. Ct. App. Aug. 1, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/341992_unp.pdf.

condition deteriorates and has a tendency to isolate himself out of fear that others will seek to harm him. The doctor explained that the last time G.W. was released from Eastern he went to a group home, but eventually stopped taking his medications and returned to Eastern. Upon G.W.'s return, it was discovered that G.W. had not been eating because he believed food was either not good for him or poisonous. G.W. lost weight and suffered from sleep deterioration. In addition, the doctor testified that, prior to a previous hospital stay, G.W. isolated himself outdoors for a long period of time and began to develop frostbite from the cold.

The doctor further explained how G.W. will not consistently take his medications. G.W. often complains the medications are killing him or causing adverse/allergic reactions. Although the doctor was hopeful that G.W. would someday be open to voluntary medication, G.W. was not yet at that point. G.W. had made clear to the staff at Eastern that, if he were released, he would stop taking medications.

During his testimony, G.W. stated he was ready to leave the hospital and that he disagreed with the doctor's mental health diagnosis. According to G.W., his only mental health issues were those that had been inflicted upon him by his doctor. G.W. expressed uncertainty over where he would live upon release from Eastern. When pressed, G.W. stated he could go stay in a warming shelter in Spokane, and would eventually be willing

No. 35141-6-III
*In re Det. of G.W.*

to live in a group home.  G.W. affirmed his doctor's testimony regarding his aversion to

medications.  G.W. claimed he was allergic to his medications and that they were

debilitating.  Nevertheless, G.W. indicated he would be willing to work with his doctor on

medications if he were released from Eastern.

The trial court entered an order finding by clear, cogent and convincing evidence

that G.W. was gravely disabled.  G.W. appeals this determination.

ANALYSIS[3]

The trial court ordered G.W.'s involuntary commitment for up to 180 days on the

basis of a grave disability.  At the time of G.W.'s trial, a "grave disability" was defined

as:

> a condition in which a person, as a result of a mental disorder: (a) is in
> danger of serious physical harm resulting from a failure to provide for his or
> her essential human needs of health or safety; or (b) manifests severe
> deterioration in routine functioning evidenced by repeated and escalating
> loss of cognitive or volitional control over his or her actions and is not
> receiving such care as is essential for his or her health or safety.

Former RCW 71.05.020(17) (2007).[4]

_____

[3] Although G.W.'s 180-day commitment period has expired, his case is not moot.
*See In re Det. of M.K.*, 168 Wn. App. 621, 625-26, 279 P.3d 897 (2012); *see also*
RCW 71.05.012, .245(3).
[4] An amendment to the definition of "grave disability" was effected in April 2018.
LAWS OF 2016, 1ST SPEC. SESS., ch. 29 § 204.  We refer to the definition that was in
operation at the time of G.W.'s trial.

3

No. 35141-6-III
*In re Det. of G.W.*

We will uphold a trial court's finding as to grave disability if substantial evidence supports one of the two alternate definitions set forth at former RCW 71.05.020(17). *In re Det. of R.H.*, 178 Wn. App. 941, 946, 316 P.3d 535 (2014); *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). In the current context, the substantial evidence test is more exacting than in ordinary civil cases, given the heightened burden of proof applicable at the involuntary commitment hearing. *LaBelle*, 107 Wn.2d at 209.

To meet its burden of proof under former RCW 71.05.020(17)(a), a petitioner "must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *LaBelle*, 107 Wn.2d at 204-05. In addition, "the failure or inability to provide for these essential needs must be shown to arise as a result of [a] mental disorder and not because of other factors." *Id.* at 205.

Substantial evidence supports the trial court's finding under former RCW 71.05.020(17)(a). G.W.'s doctor testified that G.W. suffers from a mental health disorder. When G.W. is out in the community, this disorder causes G.W. to become paranoid and socially isolated. As a result, G.W. stops taking his medications. Without medications, G.W. falls at risk of health problems (such as frostbite), lack of housing,

4

No. 35141-6-III
*In re Det. of G.W.*

malnourishment, and sleep deprivation. Although the trial court found G.W. capable of exercising informed consent regarding treatment, this finding does not undercut the court's conclusion that G.W. was apt to stop taking medications outside of the treatment context and, as a result, become incapable of meeting his basic needs. The totality of the evidence therefore provided a sufficient basis to find a grave disability. *LaBelle*, 107 Wn.2d at 205-06; *see also R.H.*, 178 Wn. App at 946-47 (affirming trial court's "gravely disabled" finding under former RCW 71.05.020(17)(a) based on similar evidence).

## CONCLUSION

The trial court's order of commitment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____         _____
Lawrence-Berrey, C.J.                              Siddoway, J.

5