IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 81798-1-I |
| M.N., | DIVISION ONE |
| Appellant. | UNPUBLISHED OPINION |

SMITH, J. — M.N. appeals the trial court's 14-day involuntary commitment order. She contends that the petitioner failed to establish that she was gravely disabled. Because the court's ruling was supported by substantial evidence, we affirm.

FACTS

Late one night in August 2020, M.N. unexpectedly showed up at her ex-husband's house. M.N. apparently believed that it was her home, although she usually lives in California. She "articulated a number of delusions." M.N. and her ex-husband have two children, who were home at the time, and M.N. acted in a manner that upset them. M.N.'s ex-husband allowed her to stay the night. A King County designated crisis responder subsequently intervened, and the King County Superior Court ordered M.N. to be detained for an initial 72-hour period. Fairfax Hospital then petitioned the court to detain M.N. for an additional 14 days of involuntary treatment.

At the probable cause hearing for the 14-day detention, M.N.'s ex-husband testified that M.N. was acting unusually. M.N. had stated that she lived

Citations and pin cites are based on the Westlaw online version of the cited material.

at his house and that she would take the children and move away, even though M.N. is allowed only supervised visits with the children. She also discussed suicide, moved items around the house, locked the door on her ex-husband and his roommate, and scared their children. Her ex-husband stated that while at his home, she slept a "little bit only" and that she made food but did not eat much. He stated that he had last seen her in California in December 2019 and that she was better then than when she appeared at his house. He also stated that she was not welcome to live at his home.

Brian Hayden, a licensed mental health counselor at Fairfax, also testified. He testified that M.N. had a working diagnosis of bipolar I, that she was currently manic with psychotic features, and that this was having a substantial adverse effect on her cognitive, intuitional function. He noted that she had exhibited rapid pressured speech, racing thoughts, agitation, delusions, and auditory hallucinations. He noted that on the first night she was admitted, her intake assessment was completed at 12:40 a.m., but she only got two hours of sleep, and that the next night she got seven hours of sleep. He testified that while she had been compliant with taking medication since her admittance to Fairfax, she had no insight regarding her need for medication. He described M.N. as "afloat in an unset reality, where she's telling me that her father is dead, but then wants to go visit him in Cambodia. She's hearing voices from her mother." When asked whether he believed that M.N. was "in danger of serious physical harm from a failure or inability to provide for her essential needs of . . . health or safety," Hayden answered yes. Hayden ultimately testified that he believed M.N.

was gravely disabled under RCW 71.05.020(23)(b), which requires a finding of deterioration in functioning, rather than under RCW 71.05.020(23)(a), which involves the danger of physical harm from an inability to provide for one's essential human needs.

The King County Superior Court commissioner found that there was insufficient evidence to establish that M.N. was gravely disabled under RCW 71.05.020(23)(b) but concluded that M.N. was gravely disabled under RCW 71.05.020(23)(a). M.N. moved for the court to reverse the commissioner's ruling, but the court affirmed the order and adopted the commissioner's findings and conclusions as its own.

M.N. appeals.

ANALYSIS

M.N. contends that the court erred by concluding that she was gravely disabled under RCW 71.05.020(23)(a). We disagree.[1]

In a probable cause hearing, the court's findings must be supported by a preponderance of the evidence. RCW 71.05.240(4)(a). "Generally, where the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence

---

[1] We agree with M.N. that although the commitment order has expired, this issue is not moot. Because a commitment order can have adverse consequences on future commitment hearings, we consider the issue presented. In re Det. of R.H., 178 Wn. App. 941, 945 n.3, 316 P.3d 535 (2014).

is evidence that is sufficient to persuade a fair-minded person that something is true. In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998), aff'd, 138 Wn.2d 898, 982 P.2d 1156 (1999). Unchallenged findings of fact are verities on appeal. In re Det. of W.C.C., 193 Wn. App. 783, 793 n.5, 372 P.3d 179 (2016).

1. Findings of Fact

M.N. challenges two of the trial court's findings: (1) that M.N. had not "slept fully" since her admission to Fairfax and (2) that if released, M.N. would not be able to "manage her needs . . . and [would] face[ ] further deterioration."[2]

First, substantial evidence supports the court's finding that M.N. had not slept fully at Fairfax. The only testimony on this issue established that M.N. got two hours of sleep her first night at the hospital and seven hours of sleep the second night. While M.N. pointed out that she arrived late at night on her first night, her intake assessment was completed by 12:40 a.m., which would presumably mean she had an opportunity to sleep more than two hours. We also note that M.N.'s ability to sleep once hospitalized and medicated is not material to the ultimate question in this case, which turns on M.N.'s ability to provide for her essential needs if released, not while hospitalized.[3]

---

[2] M.N. also challenges the court's finding that M.N. was "gravely disabled under prong A" of RCW 71.05.020(23). However, whether someone is gravely disabled is a legal conclusion, regardless of whether it is labeled as a finding. In re Det. of M.K., 168 Wn. App. 621, 624 n.4, 279 P.3d 897 (2012).

[3] In its commitment order, the court concluded that "should the respondent be released without further inpatient treatment, she will not be able to manage her needs and faces further deterioration." See also LaBelle, 107 Wn.2d at 203 (noting that, in involuntary treatment cases, the danger caused by grave disability need not be imminent because "[t]he care and treatment received by the detained person in many cases will have lessened or eliminated the 'imminence'

Second, substantial evidence supports the court's finding that if released, M.N. would not be able to manage her needs and would face further deterioration. The court's unchallenged findings establish that M.N. did not live in Washington and had no place to live here, and yet was operating under a belief that her ex-husband's house was her home. Testimony established that M.N. was only intermittently sleeping and feeding herself before her hospitalization. Combined with the court's unchallenged findings that M.N. was exhibiting poor impulse control, insight, and judgment, and did not believe that she needed to take psychiatric medications, there is sufficient evidence to determine by a preponderance of the evidence that M.N. faced an inability to provide for her essential needs.

2. <u>Conclusions of Law</u>

Next, M.N. claims that the court erred by concluding that she was gravely disabled under RCW 71.05.020(23)(a). We disagree.

RCW 71.05.020(23) defines "Gravely disabled" as

> a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

A person is gravely disabled if either prong of RCW 71.05.020(23) is met. To establish that a person is gravely disabled under the first prong, there must be

_____

of the danger of serious harm caused by that person's failure to provide for his essential health and safety needs").

5

"recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." LaBelle, 107 Wn.2d at 204-05.

The court's findings support such a conclusion here. Because of her deteriorated insight into her situation, M.N. believed she lived in a home where she was not in fact welcome and therefore exhibited an inability to provide for her need for shelter. See LaBelle, 107 Wn.2d at 210 ("Although uncertainty of living arrangements . . . will not alone justify continued confinement in a mental hospital, the evidence here indicates that LaBelle's plans to live on the streets are not the result of a choice of lifestyle but rather a result of his deteriorated condition which rendered him unable to make a rational choice with respect to his ability to care for his essential needs."). M.N. also had exhibited only intermittent ability to meet her need for food and sleep, and her lack of insight into her need for medication meant that this situation was likely to continue without treatment. Therefore, the court's findings support its conclusion that M.N. was gravely disabled under RCW 71.05.020(23)(a). See LaBelle, 107 Wn.2d at 210 (LaBelle's inability "to form realistic plans for taking care of himself outside the hospital setting" as a result of his condition supported a finding that he was gravely disabled.).

M.N. disagrees and contends that this conclusion is not supported because Hayden, the expert witness, said that the hospital was only pursuing a finding of disability under RCW 71.05.020(23)(b) and that he was "not able to

strongly find" grave disability under RCW 71.05.020(23)(a). However, whether someone is gravely disabled under this prong is a question of law for the court, not a witness. In re Det. of M.K., 168 Wn. App. 621, 624 n.4, 279 P.3d 897 (2012). Furthermore, when asked about the facts, Hayden indicated that he believed M.N. was "in danger of serious physical harm from a failure or inability to provide for her essential needs of . . . health or safety." This testimony supports a conclusion that M.N. was disabled under RCW 71.05.020(23)(a). Therefore, the court did not err by disregarding Hayden's legal conclusion.

We affirm.

_____

WE CONCUR:

_____    _____

7