**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Detention of: | No. 58502-2-II |
| C.R. | |
| | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – CR appeals the superior court's order extending her involuntary civil commitment for an additional 180 days. She argues that the superior court's gravely disabled finding was not supported by substantial evidence. We hold that the evidence is sufficient to establish that CR was gravely disabled under RCW 71.05.020(25)(b).[1] Therefore, we affirm the superior court's order.

FACTS

*Background*

CR, who suffers from schizophrenia, was charged with two counts of second degree domestic violence assault and two counts of violating a domestic violence protection order after she twice entered the family home and threatened some of her family members. After attempts to restore CR's competency failed, the felony charges were dismissed, and she was involuntarily committed.

---

[1] The legislature amended this statute in 2023. Laws of 2023 ch. 433 § 4; ch. 425 § 21. Because these amendments did not change the text of this subsection, we cite to the current version of the statute.

On February 23, 2023, Peter Bingcang, M.D., and Elwyn Hulse, Psy.D., petitioned to extend CR's involuntary commitment for an additional 180 days. The petitioners alleged that (1) CR was gravely disabled, and (2) the court had previously made a finding that she had committed a violent felony offense and she "continue[d] to be in custody pursuant to RCW 71.05.280(3) and as a result of a mental disorder . . . continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior." Clerk's Papers (CP) at 2.

The petition proceeded to a hearing before a superior court commissioner. Hulse and CR were the only witnesses.

*Hulse's Testimony*

At the hearing, Hulse, a psychologist from Western State Hospital (WSH), testified that CR had been diagnosed with schizophrenia. Hulse testified that between September 10, 2022 and the date of the hearing, CR had presented with disorganized thinking, disorganized behaviors, paranoid and grandiose delusions, magical thinking and at times poor self-care. Hulse observed that CR had delusions involving the FBI, human trafficking, and the loss of a 16-year old girl who was being trafficked.

Hulse further testified that although CR had received approximately 158 doses of antipsychotic or mood stabilizing medications in the months preceding the filing of the February petition, CR had vacillated between wanting to be compliant with her medication regime and not wanting to be compliant. Hulse concluded that CR "probably would not seek out or maintain psychiatric treatment on an outpatient basis in the community" and that she was not currently capable of making rational decisions regarding her treatment. CP at 115.

Hulse also testified that during CR's current commitment period, she had been obsessive, paranoid, emotionally unstable, and desperate. For instance, following Hulse's recent interview

with CR, CR called him several times and left frantic messages regarding the need for him to assist her in obtaining discharge so she could return to the community to find her non-existent 16-year-old adopted daughter and her husband. She also persisted in insisting that she was being unlawfully detained. Hulse also noted that CR had engaged in exit-seeking behaviors, such as checking doors to see if they had "magically" unlocked, and that she had asked everyone she had contact with "to be a special envoy for her to the CEO, and to secure her release." CP at 117.

Hulse further opined that CR lacked insight into her condition and that her judgment was poor. Hulse believed that CR could likely obtain food and shelter and stay appropriately warm or cool and that CR was currently independently performing her activities of daily living. But he believed that CR's behavior health disorder rendered her incapable of attending to her psychiatric or psychosocial needs and that if she were to be released she was "at risk of coming to the attention of first responders" and would require "some kind of emergency care." CP at 113.

Regarding CR's volitional control, Hulse stated that it was very poor. Although Hulse was not aware of any assaultive behavior during the current commitment period, the hospital had to resort to restraints, seclusion, emergency medication administration, and shocks to control CR's "rather chaotic and combative" behavior. CP at 118. Hulse concluded that CR posed a risk of causing substantial harm to others if she were to be released given her past behavior, her current mental health status, and her determination to reach her goals, including finding her non-existent "daughter."

Due to CR's ongoing symptoms and the likelihood she would not receive adequate treatment if released, Hulse opined that continued in-patient treatment at WSH was the only placement currently in CR's and the community's best interests.

*CR's Testimony*

CR testified that if she were to be released, she would stay with her grandfather, that she had discussed this plan with him and he had offered financial support, that he was aware of her mental health issues, and that they had a good relationship.

Regarding her treatment, CR testified that she was currently taking valium, which she felt helped with her anxiety, Depakote, and Risperdal. She had been taking these medications orally for a few months. But CR stated that she would only continue taking valium and would not continue to take the Depakote or Risperdal if she was discharged.

CR also disagreed with her schizophrenia diagnosis and disputed whether her medications were appropriate treatments. She denied delusions or poor self care and stated that her thinking is typically organized.

*Commissioner's Decision and Denial of Motion to Revise*

Based on this testimony, the commissioner concluded that CR continued to be gravely disabled under RCW 71.05.020(25)(b). The commissioner also found that CR continued to present a substantial likelihood of repeating acts similar to the charged criminal behavior. CR moved to revise the commissioner's decision. The superior court denied the motion to revise.

CR appeals the order granting 180 days of additional involuntary treatment.

ANALYSIS

A.    STANDARD OF REVIEW

When the superior court decides a motion to revise an order granting a petition for involuntary treatment, we review de novo the superior court's decision, not the commissioner's decision. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). But we review the superior court's decision " 'based on the evidence and issues presented to the commissioner.' "

*Id*. (quoting *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 829, 460 P.3d 667 (2020)). The commissioner's findings and orders, if not successfully revised, become the orders and findings of the superior court. *L.K.*, 14 Wn. App. 2d at 550.

When reviewing a superior court's decision on involuntary commitment for sufficient evidence, we consider whether substantial evidence supports the court's findings of fact and whether those findings of fact support the conclusions of law and judgment. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021), *review denied*, 199 Wn.2d 1009 (2022). We "view the evidence in the light most favorable to the petitioner," and we do not disturb decisions "regarding witness credibility or the persuasiveness of the evidence." *Id*.

B.      LEGAL PRINCIPLES

RCW 71.05.320(4)(d) provides that after an initial involuntary commitment period, the professional person in charge of the facility in which a person is committed may file a new petition for involuntary treatment if the committed person continues to be gravely disabled. "Gravely disabled" is defined as:

> a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25).

Here, the court found CR gravely disabled under prong (b). This prong enables the State to provide the kind of continuous care and treatment that can break "revolving door syndrome," a cycle in which patients repeatedly move from hospitalization to insecure situations, relapse, and then are rehospitalized. *In re Det. of LaBelle*, 107 Wn.2d 196, 206, 728 P.2d 138 (1986).

In a civil commitment proceeding, the petitioners have the burden of proving that a person is gravely disabled by clear, cogent, and convincing evidence. RCW 71.05.310. When a petitioner seeks to prove that a person is gravely disabled under RCW 71.05.020(25)(b), they must show (1) "recent proof of significant loss of cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for [their] health or safety." *LaBelle*, 107 Wn.2d at 208. The second requirement may include a showing that "the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id.* (emphasis omitted).

C.      SUFFICIENCY OF THE EVIDENCE

CR argues that substantial evidence did not support the gravely disabled finding under RCW 71.05.020(25)(b) because the evidence did not establish that she would be unable to provide for her essential needs. We disagree.

CR asserts that she testified that she was aware of the medications she takes, the dosage she takes, and her medication schedule. She had a plan for living in the community and a plan to support herself. She claims that this evidence is sufficient to establish that she would receive such care as is essential for her health or safety if released.

But CR fails to acknowledge her own testimony that she did not agree with her schizophrenia diagnosis and would not continue to take all of her medications if released. She also fails to acknowledge Hulse's testimony that she was currently unable to make rational decisions regarding her psychiatric care and treatment, that she would likely not seek out or maintain psychiatric treatment if she were released into the community, and that if she were to be

6

released she was "at risk of coming to the attention of first responders" and would require "some kind of emergency care." CP at 113, 115.

In *Labelle*, the Supreme Court held that the appellant's inability to understand his need for treatment and the likelihood he would not, if released, take the medication necessary to stabilize his mental deterioration tended to show that hospital treatment was essential to his health and safety. 107 Wn.2d at 213. And in *In re Detention of R.H.*, we affirmed a trial court's finding of grave disability where the appellant was unable on his own to obtain medical treatment sufficient to stabilize his mental condition unless he was involuntarily hospitalized. 178 Wn. App. 941, 947, 316 P.3d 535 (2014).

Similarly, the evidence here demonstrated that CR lacked understanding regarding her mental health condition and her need to continue her then-current medication regime. And Hulse's testimony establishes that, in light of this fact, she would not be capable of maintaining her mental condition if released.

Viewing this evidence in the light most favorable to the petitioners, this evidence is sufficient to support a finding by clear, cogent, and convincing evidence that CR would not receive such care as is essential for her health or safety if released. Therefore, substantial evidence supports the superior court's finding that CR was gravely disabled under RCW 71.05.020(25)(b).

## CONCLUSION

Accordingly, we affirm the superior court's 180 day recommitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
GLASGOW, J.